IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Case No. 09-cv-01636-PAB-KMT

AXIS VENTURE GROUP, LLC, a Colorado limited liability company,

     Plaintiff,

v.

1111 TOWER, LLC, a Delaware limited liability company,
JEFFREY B. SELBY, an individual,
MICHAEL BRENNEMAN, an individual,
DAN WOLF, an individual, and
JOHN and JANE DOES 1-100,

     Defendants.

---

**ORDER**

---

     This matter is before the Court on defendants' motion to dismiss and compel arbitration ("Defs.' Mot. to Compel") [Docket No. 6] and motion to stay pending arbitration ("Defs.' Mot. to Stay") [Docket No. 7]. The motions are fully briefed and ripe for disposition.

**I. BACKGROUND**

     On January 31, 2008, plaintiff Axis, through its manager Darrick Payne, executed a Purchase and Sale Agreement (the "Agreement") with defendant 1111 Tower, LLC for the purchase of a high-end condominium unit in downtown Denver. Dr. Payne initialed each page of the Agreement and signed and dated the Agreement at the end.

     The Agreement contains, *inter alia*, the following provisions:

-     "**Entire Agreement.** This Agreement, together with any exhibits or documents referred to in or supplied pursuant to the terms of this

Agreement (all of which are incorporated in this Agreement by this reference), contains the entire agreement between the Parties . . . ." Ex. 1 to Defs.' Mot. to Compel, App. A at 14, ¶ 22(b).

- "**Certain References and Rules of Construction** . . . The words 'this Agreement,' 'hereof,' 'herein,' and 'hereunder' and words of similar import when used in this Agreement shall refer to this Agreement as a whole (including all Exhibits hereto, the Alternative Dispute Rider, and the Express Limited Warranty) and not to any particular provision of this Agreement. All Section and Exhibit references are to this Agreement unless otherwise specified. All such Exhibits are incorporated herein by such references and made a part hereof. . . ." Ex. 1 to Defs.' Mot. to Compel, App. A at 15, ¶ 22(g).

- "**Alternative Dispute Resolution**. All controversies and disputes directly or indirectly arising out of or related to this Agreement shall be resolved in accordance with the provisions of the Alternative Dispute Resolution Procedures Rider executed by the Parties in connection herewith. Purchaser acknowledges that Purchaser's execution of such Rider is a material inducement to Seller in entering into this Agreement, establishing the Purchase Price, and performing the terms, covenants, and conditions hereof." Ex. 1 to Defs.' Mot. to Compel, App. A at 15, ¶ 22(i).

The Alternative Dispute Resolution Procedures Rider ("ADR Rider") provides that the parties shall submit to either mediation or binding arbitration to resolve any disputes arising out of the Agreement. *See* Ex. 3 to Defs.' Mot. to Compel. The ADR Rider contains a signature block, but it is unsigned. Dr. Payne did, however, sign Document Receipt Acknowledgment ("DRA") the same day he executed the Agreement. The DRA provides that the "undersigned hereby acknowledges receipt of the Teatro Tower Condominium Client Binder, containing the following: . . . 2. Alternative Dispute Resolution Procedures." Ex. 2 to Defs.' Mot. to Compel.

On June 11, 2009, Axis brought suit against defendants raising a number of claims for relief and seeking revocation and rescission of the Agreement. *See* Ex. A to Notice of Removal [Docket No. 1]. Two of the claims for relief sought recovery pursuant

to the Interstate Land Sales Full Disclosure Act ("ILSFDA"), 42 U.S.C. § 1700 *et seq.*

Defendants removed the action to this Court on July 9, 2009. Thereafter, defendants filed the instant motions, contending that plaintiff agreed to submit all disputes arising under the Agreement to binding arbitration.

## II. FEDERAL ARBITRATION ACT

Defendants seek dismissal for lack of subject matter jurisdiction on account of an alleged agreement to arbitrate. "The mere existence of an arbitration agreement, however, does not divest a federal court of subject matter jurisdiction." *Will v. Parson Evergreene, LLC*, No. 08-cv-00898, 2008 WL 5330681, at *1 (D. Colo. Dec. 19, 2008); *see Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994) (stating that, upon a motion to stay pending arbitration, the "proper course . . . would have been for the district court to grant Defendant's motion and stay the action pending arbitration" rather than dismiss the action); *Meyer v. Dans un Jardin, S.A.*, 816 F.2d 533, 538-39 (10th Cir. 1987) ("Section 3 of the Federal Arbitration Act contemplates continuing supervision by the district court to ensure that arbitration proceedings are conducted within a reasonable period of time, thus preventing any impairment of the plaintiffs' right to seek relief.").

Defendants have also sought a stay of these proceedings pending arbitration. Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms

of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C.A. § 3.  Further, the FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This statutory scheme "manifests a liberal federal policy favoring arbitration." *Comanche Indian Tribe v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)). Consequently, the Court must "resolve 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" *P & P Industries, Inc. v. Sutter Corp.*, 179 F.3d 861, 866 (10th Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).  "In addition, this liberal policy 'covers more than simply the substantive scope of the arbitration clause,' and 'encompasses an expectation that [arbitration] procedures will be binding.'" *Id.* (citation omitted).

With that said, there is no such presumption when assessing "whether there is a valid and enforceable arbitration clause in the first instance."  *Encore Productions, Inc. v. Promise Keepers*, 53 F. Supp. 2d 1101, 1108 (D. Colo. 1999) (citing *Riley Manufacturing Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998)).  "'[T]he question of arbitrability – whether a [contract] creates a duty for the parties to arbitrate the particular grievance – is undeniably an issue for judicial determination.  Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the

arbitrator.'"  *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779

(10th Cir. 1998) (quoting *AT & T Technologies v. Communications Workers,* 475 U.S.

643, 649 (1986)); *see First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944-45

(1995) ("[T]he law treats silence or ambiguity about the question '*who* (primarily) should

decide arbitrability' differently from the way it treats silence or ambiguity about the

question '*whether* a particular merits-related dispute is arbitrable because it is within the

scope of a valid arbitration agreement' – for in respect to this latter question the law

reverses the presumption.").  Because defendants have not argued that there is

anything "in the contract that demonstrates the parties' intent to submit to an arbitrator

the threshold question of whether an agreement to arbitrate exists or remained in

existence after the later agreement," *Encore Productions*, 53 F. Supp. 2d at 1108

(citing *Riley*, 157 F.3d at 781), I must resolve the initial question of arbitrability.

Judges in this district have crafted a sensible approach to disputes over whether

the parties have agreed to arbitrate, applying "a standard similar to that governing

motions for summary judgment."  *Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211,

1213 (D. Colo. 2005); *see Ernest v. Lockheed Martin Corp.*, No. 07-cv-02038, 2008 WL

2958964, at *3 (D. Colo. July 29, 2008); *Cornell v. Harmony Homes, Inc.*, No. 06-cv-

00323, 2007 WL 38132, at *3 (D. Colo. Jan. 4, 2007); *see also In re Universal Service

Fund Telephone Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1116 (D. Kan. 2003)

("The Courts of Appeals have uniformly held that '[i]n the context of motions to compel

arbitration brought under the Federal Arbitration Act . . . courts apply a standard similar

to that applicable to a motion for summary judgment.'"); *cf. Avedon Eng'g, Inc. v.*

*Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997) ("The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked."). Taking this approach, the Court will require defendants to bear the initial burden of presenting evidence sufficient to demonstrate that an enforceable arbitration agreement exists. *See Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211, 1212 (D. Colo. 2005). If they meet that burden, the burden shifts to the plaintiff, which must show that there is a "genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed.R.Civ.P. 56." *Stein*, 396 F. Supp. 2d at 1213.

## III. DISCUSSION

As the sections of the Agreement quoted above demonstrate, the parties incorporated the ADR Rider by reference into the Purchase and Sale Agreement. Moreover, page 15 of the Agreement specifically references the ADR Rider. By initialing that page, Dr. Payne, on behalf of Axis, was agreeing that "[a]ll controversies and disputes directly or indirectly arising out of or related to this Agreement shall be resolved in accordance with the provisions of the Alternative Dispute Resolution Procedures Rider executed by the Parties in connection herewith." Ex. 1 to Defs.' Mot. to Compel at 15, ¶22(i). Furthermore, Dr. Payne acknowledged receipt of the ADR Rider when he signed the DRA. Defendants have met their initial burden of supplying the Court with sufficient evidence that the parties agreed to subject any dispute to arbitration.

The burden, therefore, shifts to Axis to show that there is a "genuine issue of

6

material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56." *Stein v. Burt-Kuni One, LLC,* 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005). Axis attempts to do so by arguing that "Seller's apparent business practice was to direct its buyers' attention to a myriad of pages of less crucial documents . . . and to in fact require its buyers to initial those documents, while disclosing the ADR Rider and its terms only after the Purchase and Sale Agreement had been signed." Pl.'s Response to Mot. to Compel at 3. There is no record evidence to support that assertion.

Axis has supplied the Court with an affidavit of Dr. Payne. In his affidavit, Dr. Payne admits he did not read the Agreement, claiming he did not have sufficient time because it was executed late in the last day before preferential pricing offered by defendants would expire. Axis argues that it is not bound by the terms of the Agreement because Dr. Payne did not read them. That argument is unavailing. "It is a fundamental principle of law that, absent fraud or concealment, a person who signs a document is presumed to have knowledge of the document's contents, independent of whether that person has read the document." *Breaux v. American Family Mut. Ins. Co.*, 387 F. Supp. 2d 1154, 1162 (D. Colo. 2005) ("Here, Plaintiff alleges no fraud or concealment and signed the waiver.") (citation omitted). Dr. Payne states that "the Seller never mentioned the issue of arbitration or alternative dispute resolution [during negotiations], nor did Seller otherwise suggest that arbitration or alternative dispute resolution would be an aspect of any agreement between Seller and Axis." Payne Aff., Ex. A to Pl.'s Response to Mot. to Compel at 1, ¶ 4. This fails to account for two undisputed facts. First, he had access to the ADR Rider prior to closing. Second, even

if he had not received access prior to closing, the Agreement itself specifically references alternative dispute resolution and the ADR Rider. He acknowledged receiving the ADR Rider that day and provides no evidence that he was misled or that the document was concealed prior to execution of the Agreement.

Axis attempts to avoid the clear implication of these facts by suggesting that Dr. Payne was not afforded the opportunity to read the Agreement and implying that he was affirmatively instructed to sign the documents without reading them. Dr. Payne states that "Ms. Erickson [a sales representative for defendant 1111 Tower, LLC] asked me to sign and initial every page of a document titled Purchase and Sale Agreement. . . ." *Id.* at 2, ¶ 7. He adds that "[i]t was late in the afternoon, and I was not provided sufficient time to read carefully the entire Purchase and Sale Agreement. This was the first time I was provided a copy of the Purchase and Sale Agreement or any draft thereof." *Id.* at 2, ¶7. He "did not notice any arbitration or alternative dispute resolution language at the time." *Id.* at 2, ¶8. Furthermore, he states:

> After I signed the Purchase and Sale Agreement, I was asked to initial and/or sign numerous other documents, which were all described by Ms. Erickson as "standard stuff." These documents apparently included an acknowledgment of having received several documents. I initialed and/or signed the documents as requested. I was never asked to sign an Alternative Dispute Resolution Procedures Rider . . . . Prior to signing the Purchase and Sale Agreement, I was never provided or shown the ADR Rider. If first learned of the ADR Rider in 2009, after my attorney was informed of its existence by Seller's counsel.

*Id.* at 2, ¶¶10-11. It might be true that Dr. Payne was not aware of the existence of the ADR Rider. The record clearly demonstrates, however, that he decided not to concern himself with the ADR Rider and the specific terms of the Agreement. He was provided access to the ADR Rider prior to the closing; he signed a document acknowledging that

8

receipt; and he executed by signature and initialing every page the Agreement which specifically made reference to the ADR Rider.

In fact, Ms. Erickson affirms that she "directed Dr. Payne and Mr. Nassar [Axis' other principal] to the . . . contract documents (which include the ADR Procedures Rider) on January 28, 2008, three days before Dr. Payne signed the Purchase Agreement on behalf of Axis." Erickson Aff., Ex. A to Defs.' Reply in Support of Mot. to Compel ("Defs.' Reply") at 2, ¶ 7. She did so by providing a web address and password for them to access the documents. *See* Ex. C to Defs.' Reply. That email was actually sent on January 29, 2008. In any event, there is no genuine issue of material fact that the Axis principals had access to the contract documents and had the opportunity, if they had chosen to take it, to review them prior to executing the Agreement.[1] Indeed, Axis does not directly contest that point.

Instead, it argues that Dr. Payne was "instructed" and "required" to sign the documents. Yet, there is no record evidence that Dr. Payne was prevented from reading the Agreement, only that he may not have had time to do so and also execute it before the end of the day on January 31. Even assuming he was informed that the price he was being offered would not survive to February 1, there is no evidence in the record that he was compelled or defrauded into signing the relevant documents. Nor is there any indication he asked for additional time to read the Agreement. What does seem clear from the record is that Dr. Payne was not concerned with the substantive

_____

[1]Ms. Erickson also indicates that, "[s]hortly after [an] August 19, 2007 meeting, [she] took steps to ensure Mr. Nassar had access to all of the legal documents listed in the Document Receipt Acknowledgment an/or provided in the Client Binder." Erickson Aff., Ex. A to Defs.' Reply at 2, ¶ 6.

terms of the Agreement and accompanying documents, seeing as he claims he was unaware of the existence of the ADR Rider yet does not offer any evidence that it was concealed from him.

Axis' contention that the ADR Rider cannot be enforced because it was not separately signed is equally unavailing. As an exhibit to the Agreement, it was incorporated by reference by section 22(b) of the Agreement, which provided that "[t]his Agreement, together with any exhibits or documents referred to in or supplied pursuant to the terms of this Agreement (all of which are incorporated in this Agreement by this reference), contains the entire agreement between the Parties . . . ." Ex. 1 to Defs.' Mot. to Compel, App. A at 14, ¶ 22(b).[2]

Axis then returns to the lack of signature on the ADR Rider to argue that it was not "executed" as required by the terms of section 22(i) of the Agreement. Even if the Court were to accept that the ADR Rider must be separately signed to have been deemed executed pursuant to section 22(i) of the Agreement – which the Court does not, because it appears that the Agreement contemplated that the ADR Rider would be executed by and through execution of the Agreement – plaintiff ignores the plain text of section 22(b). Section 22(b) not only incorporates those documents "referenced" with the Agreement (which in plaintiff's view would require a signed ADR Rider), but also incorporates those documents "supplied pursuant to the terms of this Agreement."

---

[2]Plaintiff argues that for a document to be incorporated by reference, it must exist at the time of the Agreement. The ADR Rider was in existence at the time the Agreement was executed. In fact, Dr. Payne was provided access to it three days before signing the Agreement and acknowledged receiving it the day he executed the Agreement.

Defendants did supply Axis with the ADR Rider. Dr. Payne simply did not read it.[3]

The Court also rejects Axis' argument that it did not waive its right to a jury trial. To the contrary, for all the foregoing reasons, Axis entered into a binding agreement which included the terms of the ADR Rider. One of those terms was the following:

> THE PARTIES ACKNOWLEDGE AND AGREE THAT THEY ARE HEREBY WAIVING ANY RIGHTS TO TRIAL IN A COURT OF LAW, INCLUDING TRIAL BY JURY, IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM BROUGHT BY ANY OF THE PARTIES AGAINST THE OTHER IN CONNECTION WITH ANY MATTER WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH ANY DISPUTE.

Ex. 3 to Defs.' Mot. to Compel at 6, §3(o) (capitalization in original). Axis' contention that this was inadequately conspicuous is unpersuasive. Here, the provision was in all capital letters and was within a document entitled "Alternative Dispute Resolution Procedures Rider" which was specifically referenced in a section of the Agreement entitled "Alternative Dispute Resolution." *See Tracinda Corp. v. DaimlerChryslerAG*, 502 F.3d 212, 223 (3d Cir. 2007) ("[T]he 'loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate' . . . .") (quoting *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 638 (4th Cir. 2002)). Axis is an entity with sophisticated principals acting on its behalf. This undisputed record evidence requires the Court to find that there was an adequate waiver here.

Axis also argues that forcing him to arbitrate his dispute would be

---

[3]Axis also contends that the agreement to arbitrate cannot be enforced because defendants "caused a situation where Axis could not have known it had the right to compel arbitration" and, therefore, had the sole right to bring a dispute into arbitration if it wished. There is no record support for this argument. And defendants, no less than Axis, are bound by the agreement to arbitrate.

unconscionable. Axis cites the proposition that, pursuant to Colorado law, "a finding of unconscionability requires 'evidence of some overreaching on the part of one of the parties such as that which results from an inequality of bargaining power or under other circumstances in which there is an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to that party.'" *Internet Archive v. Shell*, 505 F. Supp. 2d 755, 767 (D. Colo. 2007) (quoting *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986)).[4] As the discussion above makes clear, however, there is simply no evidence of overreaching or of inequality of bargaining power. Indeed, Axis considered purchasing the property over the course of many months, and its sophisticated principals had every opportunity to review, challenge, and reject the Agreement if they had so chosen. *See* Erickson Aff., Ex. C. to Defs.' Reply at 2, ¶¶ 4, 8. The Court is "satisfied that the making of the agreement for arbitration . . . is not in issue." 9 U.S.C. § 4; *see Spahr v. Secco*, 330 F.3d 1266, 1269-70 (10th Cir. 2003) ("Although 'doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,' a court may compel arbitration of a particular dispute under § 4 of the FAA only when satisfied that the 'making' of the agreement to arbitrate is not at issue.") (citations omitted).

With that said, "an arbitration agreement that prohibits the use of the judicial forum as a means of resolving statutory claims must also provide for an effective and accessible alternative forum." *Shankle v. B-G Maint. Mgmt. of Colo., Inc.*, 163 F.3d

---

[4]*Cf. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985) ("[C]ourts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.'") (quoting 9 U.S.C. § 2).

1230, 1234 (10th Cir. 1999). Axis argues that the arbitral forum, as defined by the ADR Rider, is inadequate. In particular, Axis points out that the ADR Rider prohibits recovery of punitive and other damages that would otherwise be available, shortens the relevant statute of limitations, and bars judicial review of the arbitration award.[5] "Plaintiff['s] 'vindication of statutory rights' arguments reflect 'the presumption that arbitration provides a fair and adequate mechanism for enforcing statutory rights.'" *Kristian v. Comcast Corporation*, 446 F.3d 25, 37 (1st Cir. 2006) (citations omitted).

As a general proposition, an agreement to arbitrate a statutory claim is enforceable. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). "Although all statutory claims may not be appropriate for arbitration, having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* (internal quotation omitted). It is Axis' burden to show Congress evinced that intention, which it has not done in this case. *Cf. Olle v. 5401 Western Ave. Residential, LLC*, 569 F. Supp. 2d 141, 147-48 (D.D.C. 2008) (enforcing an agreement to arbitrate an ILSFDA claim and stating that "it is common for parties to agree to seek to vindicate their statutory rights in a forum of their choosing such as arbitration").

_____

[5]Defendants respond that this point is irrelevant to this case because Axis has not sought such damages in its complaint. A review of Axis' complaint, however, reveals that Axis has alleged that it is "entitled to the remedies under the Act for Defendants' violations of the Act's antifraud provisions, namely, 'damages, specific performance, or such other relief as the court deems fair, just, and equitable.'" Ex. A to Notice of Removal [Docket No. 1] at 10, ¶ 77 (citing 15 U.S.C. § 1709(a)). Furthermore, Axis seeks "exemplary damages as provided for by the Colorado Consumer Protection Act upon a showing consistent with the requirements of C.R.S. § 13-21-105(1.5)(i)." *Id.* at 12.

Nor has plaintiff identified any other basis for the Court to reach the question of whether the challenged provisions are enforceable. Plaintiff's primary basis for challenging the adequacy of the arbitral forum is the purported damages waiver.[6] The ADR Rider, which is incorporated into the Agreement by reference, contains the following provision:

> Final resolution of any Dispute through arbitration may include any remedy or relief which the arbitrator deems just and equitable, including any and all remedies provided by applicable state or federal statutes; provided, that it is expressly agreed that the arbitrator shall have no authority to award punitive or exemplary damages, the Parties hereby waiving their right, if any, to recover punitive or exemplary damages (and the Parties hereto specifically agree that any Dispute as to whether a Party may obtain meaningful relief for allegations of statutory violations in an arbitration forum shall be resolved by arbitration as provided in this Section). The Parties further specifically waive the right to seek or obtain Other Damages.

Ex. 3 to Defs.' Mot. to Compel at 4, § 3(g). In fact, the Purchase Agreement, in addition to incorporating the ADR Rider's provision, contains a separate damages waiver:

> In addition to any limitations set forth herein on the rights and remedies of any Party, in no event shall Purchaser or Seller be entitled to a claim for special, secondary, consequential, incidental, punitive or exemplary damages (including treble damages or damages based upon any other

---

[6]Plaintiff's other two grounds for claiming the inadequacy of the arbitral forum, i.e., the shorter statute of limitations and the limitation on appeal, are also unavailing. In regard to the statute of limitations, the plaintiff has not argued that it will bar its claims. *Cf. In re Cotton Yarn Antitrust Litigation*, 505 F.3d 274, 292 (4th Cir. 2007) ("[B]ecause it is far from certain that the one-year limitations period will have any effect on the plaintiffs' ability to prosecute their antitrust claims, the plaintiffs have not carried their burden of demonstrating that the terms of the arbitration agreement will prevent them from effectively vindicating their statutory rights."). And, in regard to the ADR Rider's limitation on appeal, the Court finds it premature to address that issue. For the reasons outlined below, the Court will send all such questions to the arbitrator to decide in the first instance. For the reasons outlined more fully below in relation to the damages waiver, it is purely speculative whether plaintiff will be in a position to want judicial review of an arbitration decision. Indeed, plaintiff could very well be in the position to seek enforcement of the appeal limitation.

multiplier); damages for mental anguish or emotional distress; damages for pain or suffering; damages based on a claimed diminution in the value of the Unit even if Seller has been advised of the possibility of such damages; and damages for noneconomic loss or injury or for derivative economic loss or injury (collectively, "Other Damages"). Each of Purchaser and Seller hereby waive, release, and covenant not to assert any right or claim to any such Other Damages.

Ex. 1 to Defs.' Mot. to Compel at 8, § 15(d).

The question presented to the Court is whether, in light of these damages waivers, Axis will be able to "'effectively . . . vindicate [its] statutory cause of action in the arbitral forum.'" *Gilmer*, 500 U.S. at 28 (quoting *Mitsubishi Motors*, 473 U.S. at 637). "[A]rbitration of statutory claims works because potential litigants have an adequate forum in which to resolve their statutory claims and because the broader social purposes behind the statute are adhered to." *Shankle*, 163 F.3d at 1234. But, as the Tenth Circuit emphasized in *Shankle*, "[t]his supposition falls apart . . . if the terms of an arbitration agreement actually prevent an individual from effectively vindicating his or her statutory rights." *Id.* (citations omitted). Mr. Shankle was required to enter into a mandatory arbitration agreement to continue his employment. The agreement, however, required that he pay a share of the arbitration costs. He could not afford the likely fee for arbitration and, therefore, arbitration was not "an accessible forum in which he could resolve his statutory rights." *Shankle*, 163 F.3d at 1233.[7]

---

[7]After the decision in *Shankle*, the Supreme Court decided *Green Tree Financial Corp. – Alabama v. Randolph*, 531 U.S. 79 (2000). In response to an argument that *Shankle* had been abrogated by *Green Tree*, the court in *Perez v. Hospitality Ventures – Denver LLC*, 245 F. Supp. 2d 1172, 1173 (D. Colo. 2003), pointed out that, "[a]t most . . . *Green Tree* stands for the proposition that the employee must demonstrate that, under the arbitration agreement, she was likely to incur substantial fees and costs that would prevent her from vindicating federal statutory rights." (citations omitted). "The Court held the employee in *Green Tree* had not carried this burden because the

There is no comparable bar to access presented by the present case. *See In re*

*Universal Service Fund Telephone Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1129

(D. Kan. 2003) ("[P]laintiff[] [has] failed to satisfy [its] burden of proving that arbitration

will not serve as an effective and *accessible* forum for them to vindicate their statutory

rights . . . .") (emphasis added).

That leaves whether the potential enforcement of the damages waiver by the

arbitrator implicates the "effectiveness" of the arbitral forum and, if so, whether that

question is for the Court or the arbitrator to decide in the first instance. As the Supreme

Court has made clear, questions of arbitrability are those the "contracting parties would

likely have expected a court to have decided." *Howsam v. Dean Witter Reynolds, Inc.*,

537 U.S. 79, 83 (2002). "In certain limited circumstances, courts assume that the

parties intended courts, not arbitrators, to decide a particular arbitration-related matter. .

. . They include certain gateway matters, such as whether the parties have a valid

arbitration agreement at all or whether a concededly binding arbitration clause applies

to a certain type of controversy." *Green Tree v. Bazzle*, 539 U.S. 444, 452 (2003).

The damages waiver issue here does not clearly fall into the two examples of

gateway issues identified in *Howsam.* Arguably, "[i]t concerns neither the validity of the

arbitration clause nor its applicability to the underlying dispute between the parties."

*Bazzle*, 539 U.S. at 452 ("[T]he question is not whether the parties wanted a judge or an

arbitrator to decided *whether they agreed to arbitrate a matter*. Rather the relevant

_____

arbitration agreement did not state who was to bear arbitration costs and because the
employee failed to make a factual showing that she was likely to incur prohibitive
expenses." *Id.* (citations omitted).

question here is what *kind of arbitration proceeding* the parties agreed to.") (emphasis in original). Where the arbitration agreement itself indicates the parties agreed that an arbitrator would decide such questions, that agreement should be enforced. *Cf. id.*; *see Howsam*, 537 U.S. at 85 ("'[*I*]n the absence of an agreement to the contrary*, issues of substantive arbitrability . . . are for a court to decide . . . .'") (quoting Revised Uniform Arbitration Act of 2000, § 6, comment 2, 7 U.L.A. at 13 (Supp. 2002)) (emphasis added)). The ADR Rider here provides that the arbitrator will resolve "any claim that all or part of the Purchase Agreement is void or voidable" and "the scope and enforceability of this arbitration provision and associated 'questions of arbitrability.'" *See* Ex. 3 to Defs.' Reply at 1. It also provides that a dispute regarding "whether a Party may obtain meaningful relief for allegations of statutory violations in an arbitration forum shall be resolved by arbitration . . . ." *Id.*. at 4, §3(g). Therefore, to the extent plaintiff challenges the arbitrability of the damages waivers found within the Purchase Agreement, including the ADR Rider's provision which was incorporated therein by reference, it has agreed to send that issue to arbitration. *See Monex Deposit Co. v. Gilliam*, 616 F. Supp. 2d 1023, 1026 (C.D. Cal. 2009).

Furthermore, the potential inadequacy plaintiff alleges in the arbitral forum is speculative at this point, rendering any decision by this Court premature. In *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003), the Supreme Court was "asked to decide whether respondents can be compelled to arbitrate claims arising under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, notwithstanding the fact that the parties' arbitration agreements may be construed to

limit the arbitrator's authority to award damages under that statute." *Id.* at 402. Like

here, "[r]espondents opposed the motion [to compel arbitration] on the ground that,

because the arbitration provisions prohibit an award of punitive damages, respondents

could not obtain 'meaningful relief' in arbitration for their claims under the RICO statute,

which authorizes treble damages, 18 U.S.C. § 1964(c)." *Id.* at 403. In response,

> Petitioners argue[d] that whether the remedial limitations render their arbitration agreements unenforceable is not a question of 'arbitrability,' and hence should have been decided by an arbitrator, rather than a court, in the first instance. They also claim[ed] that even if this question is one of arbitrability, and is therefore properly within the purview of the courts at this time, the remedial limitations at issue d[id] not require invalidation of their arbitration agreements. Either way, petitioners contend[ed], the lower courts should have compelled arbitration.

*PacifiCare*, 538 U.S. at 403-404. The Supreme Court determined it was "premature . . .

to address these questions" in light of the uncertainty over whether the arbitrator would

interpret the provision as prohibiting treble damages. *Id.* at 404.[8] The parties appear to

concede that the damages waiver, if enforced, could bar recovery of damages that

---

[8]The holding in *PacifiCare* has been read as implying that "if the remedies limitation in the arbitration agreement posed a clear conflict with the remedies available in the RICO statute, that clear conflict would pose a question of arbitrability." *Kristian v. Comcast Corp.*, 446 F.3d 25, at 46 (1st Cir. 2006). Assuming the existence of a damages limitation in direct conflict with statutorily available remedies, a conclusion the Court need not reach here, *PacifiCare*'s holding does not so clearly imply that the Court *must* always address the enforceability of the damages waivers in the first instance. In *PacifiCare*, the uncertainty surrounding the interpretation of the provision rendered the claimed inadequacy of the arbitral forum speculative. It was that speculativeness, and not what created it, that was central to the *PacifiCare* court's reasoning that reaching the issues presented would be premature. For the reasons stated more fully below, it is speculative whether the question plaintiff presents – whether it is viewed as one of arbitrability or not – will ever have to be decided. Doing so now, therefore, is unnecessary and premature. In any event, even assuming any questions surrounding the damages waiver are threshold questions normally left to courts, the parties have evidenced their desire to have such questions resolved in arbitration.

would otherwise be available.  It is not at all clear, however, whether the arbitrator will

find plaintiff is entitled to recover any damages and, if it is, whether such damages will

include those barred by the damages waiver.  *Cf. Anderson v. Comcast Corp.*, 500 F.3d

66, 75 (1st Cir. 2007) (finding that conflicts between "the multiple damages provision of

the statute and the multiple damages prohibition in the arbitration agreement" did not

"pose a question of arbitrability because: (1) the conflict between the mandatory portion

of the statute and the agreement will only arise if the arbitrator makes a factual finding

(a willful and knowing violation) that relates to the merits of the dispute; and (2) if the

arbitrator finds a violation of the statute that is not willful or knowing, the discretionary

award of multiple damages may or may not be waivable under Massachusetts law").  In

the event both of those contingencies come to pass, the arbitrator may still address

plaintiff's arguments that the damages waiver is unenforceable.[9]  *See Destephano v.*

*Broadwing Comm'cns Inc.*, 48 F. App'x 103, 2002 WL 31016599, at *6 (5th Cir. Aug.

20, 2002) ("The arbitrator may consider the argument that the remedy of punitive

damages may not be effectively waived for a Title VII claim. . . .  It may not even be

necessary to reach this issue if it is determined that DeStefano's Title VII claim is

without merit (or, even if meritorious, is not such as would support punitive damages

_____

[9]The arbitrator is empowered by a severability clause to strike any provision it finds to be contrary to law.  *See* Ex. 1 to Defs.' Mot. to Compel at 14, § 22(f) ("**Severability.**  If any terms, covenants, or provisions of this Agreement shall be illegal or unenforceable for any reason, the same shall not invalidate any other term, covenants, or provisions, and all of the remaining terms, covenants and provisions shall remain in full force and effect.").  As stated above, the ADR Rider has been incorporated by reference into the Agreement.  Consequently, contrary to plaintiff's contention, this severability clause applies to the ADR Rider.

under Title VII).") (citations omitted).[10]

Finally, to the extent the ADR Rider seeks to limit the arbitrator's authority to grant certain forms of damages, so too does the Agreement attempt to limit a court's power. *See, e.g.*, Ex. 1 to Defs.' Mot. to Compel at 8, § 15(d) ("[I]n no event shall Purchaser or Seller be entitled to a claim for special, secondary, consequential, incidental, punitive, or exemplary damages . . . ."). In light of the otherwise broad powers granted to the arbitrator by the Agreement, the same issues of enforceability can be presented regardless of where the disputes are heard. In this way, the Court is not convinced that arbitration will not be a "valid alternative to traditional litigation." *Kristian v. Comcast Corp.*, 446 F.3d 25, 37 (1st Cir. 2006). Here, the speculative possibility that damages may be limited at the end of the process is not an issue requiring court resolution under the specific circumstances presented by this case. *Cf. Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 ( 2000). "Given the tightly circumscribed role that the courts are assigned in determining arbitrability, and considering that arbitrators have broad equitable powers to fashion remedies, it is not for [the Court] to decide that a remedy will not be available for a particular grievance." *Oil, Chemical and Atomic Workers Intern. Union Local 5-391 v. Conoco, Inc.*, 64 F.

---

[10]In *Booker v. Robert Half Intern., Inc.*, 315 F. Supp. 2d 94 (D.D.C. 2004), the court found that "the punitive damages exclusion in the Agreement is plainly unenforceable." *Id.* at 104. The *Booker* court was presented with circumstances significantly distinguishable from the present action. To the extent that decision states a per se rule that such exclusions are not only unenforceable but always a matter for a court to decide in the first instance, the Court finds it unpersuasive in light of the principles laid out in *PacifiCare*, *Howsam*, and *Bazzle*.

App'x 178, 185 (10th Cir. 2003) (unpublished).[11]

If the arbitrator rules against plaintiff or finds that relief to which plaintiff would otherwise be entitled is barred by a non-severable provision of the Agreement, the plaintiff may then have a potential claim that it was denied "meaningful relief." At that point, it can raise this issue with the Court and, upon doing so, can challenge the ADR Rider's provision limiting review of the arbitral award. But at this stage of the proceedings, "[g]iven the presumption in favor of arbitration, a court should not foreclose the operation of that presumption by deciding that there is a question of arbitrability when there is the possibility that an arbitrator's decision in the first instance would obviate the need for judicial decision making." *Kristian*, 446 F.3d at 40 (describing the reasoning of *PacifiCare*, 538 U.S. at 407 n.2). Therefore, the action should be stayed so that the arbitrator can resolve these questions, as was contemplated by the parties' agreement.

## IV. CONCLUSION

In light of the foregoing, it is

**ORDERED** that the motion to dismiss and compel arbitration [Docket No. 6] is GRANTED in part and DENIED in part. It is further

---

[11] *Cf. Great Western Mortgage Corp. v. Peacock*, 110 F.3d 222, 232 (3d Cir. 1997) ("The availability of punitive damages is not relevant to the nature of the forum in which the complaint will be heard. Thus, availability of punitive damages cannot enter into a decision to compel arbitration. [The state statute] provides that a victim of unlawful discrimination may be awarded punitive damages, but the issue of whether this right has been waived is separate and apart from the issue of whether an employee has agreed to an arbitral forum, and hence, is for the arbitrator to decide.") (citations omitted).

**ORDERED** that the motion to stay [Docket No. 7] is GRANTED.  It is further

**ORDERED** that this case is STAYED and the parties shall proceed with arbitration in accordance with the arbitration agreement.  It is further

**ORDERED** that this case shall be administratively closed, pursuant to D.C.COLO.LCivR 41.2, with leave to be reopened for good cause shown.  If no action is taken to reopen this case before April 1, 2011, the case will be dismissed without prejudice without any further notice to either party.

DATED March 30, 2010.

BY THE COURT:


s/Philip A. Brimmer_____
PHILIP A. BRIMMER
United States District Judge